DREW, J.
 

 11 Robbie Lee Guilleard was convicted at bench trial of armed robbery while armed with a firearm, violations of La. R.S. 14:64 and 14:64.3. After adjudication as a second felony offender, the court sentenced Guil-leard to 49½ years at hard labor, the first 15 years without benefit of probation, parole, or suspension of sentence, and the balance without the benefit of probation or suspension of sentence. The defendant now appeals his conviction and sentence. We affirm the conviction. We amend the sentence, and, as amended, affirm.
 

 FACTS
 

 Letitia Casey testified that:
 

 • she worked at a Shreveport “payday loan” business called Easy Money;
 

 • on the day of the robbery, a red-haired woman came in to ask about a loan;
 

 • the red-haired woman left, then returned 30 or 40 minutes later, followed by another woman and a man (tall, slim, with scarf and big eyes), who said, “Bitch, this is a robbery”;
 

 • the woman with red hair began taping her with gray duct tape;
 

 • she (Casey) identified the robber from a photo lineup, and she identified him in court as the robber, who was armed with a gun;
 

 • she heard one woman say, “Luke, what else you want us to do?,” to which he responded, “Take the bitch rings and stuff,” which they did, along with her purse, as well as money from the business;
 

 • after they left, she was able to push a “panic button” to summon police;
 

 • she also identified the woman with red hair from a photographic lineup, though she did not recall seeing the woman in court during the trial; and
 

 • she admitted that she had seen Guil-leard for only a few seconds.
 

 
 *868
 
 ^Officer Joshua Pettigrew of the Shreveport Police Department testified that:
 

 • he responded to the robbery and found Casey bound by gray duct tape;
 

 • Casey said a red-haired female had come in with another female and a male;
 

 • Casey told him that the male came behind the counter, pointed a handgun at her, and told her it was a robbery, then taped her eyes, hands, and feet; and
 

 • Casey told the officer that the robbers took envelopes and her purse.
 

 Elyse Rock testified that:
 

 • she was Guilleard’s girlfriend;
 

 • she had been allowed to plead guilty to simple robbery relative to this crime;
 

 • she participated in the robbery at Easy Money, along with Guilleard (whom she identified in court) and “D” (she did not know D’s full name);
 

 • D went in first, Rock second, and Guil-leard last, showing a gun;
 

 • D came around the desk, with Rock following her;
 

 • D taped Casey while Rock looked through some drawers;
 

 • Guilleard just held the gun, while D got the money, purse, and rings;
 

 • Guilleard’s cousin, Carla Bell, suggested the robbery to him, saying, “I know a place you could rob,” to which he responded, “Well, I ain’t really into that”;
 

 • before the robbery Rock and Guilleard took Ecstacy, making his eyes “bugged”;
 

 • Rock’s hair on the day of the robbery was black on top and burgundy at the ends;
 

 • D’s hair on the day of the robbery was “reddish”;
 

 • D went in initially to “scope things out”;
 

 |.⅛* she later was picked up by Detective Demery, advised of her rights, but was “forced” to make a statement by the detective “just insisting and insisting, and he told me I was going home if I tell”;
 

 • she told him the truth, but not the whole truth;
 

 • she had asked for a lawyer “way before all this even much got started. ' I even asked him could I call my mama, and he was like, ‘I’m going to call her, I’m going to call’ and all that”;
 

 • she acknowledged that Guilleard was called Luke;
 

 • she had previously pled guilty to misdemeanor theft;
 

 • when shown a photo of the woman (Rock) that Casey had identified as the person who had robbed her, she insisted she wasn’t the first one in the store;
 

 • she had a minor role in the robbery,
 

 • her purpose in going into Easy Money was to see what was going on;
 

 • she denied knowing how much money was taken, though she heard herself say on the recording in court that she got $375; but
 

 • she denied, on the stand, that she got any money.
 

 Detective Rod Demery testified that:
 

 • he arrested Guilleard and Rock;
 

 • he took the recorded statement from Rock, who initially denied involvement, but later said she was involved, but denied taping Casey;
 

 • Rock said that the other female did the taping and that Guilleard had the gun;
 

 • Rock admitted going behind the counter and rifling through some drawers;
 

 
 *869
 
 • Rock’s statement was free and voluntary, made after waiving her
 
 Miranda
 

 [1]
 
 rights;
 

 • he interviewed Guilleard after his waiver of his rights per
 
 Miranda, sti-pra;
 

 1he played the tape in court, without objection, wherein Guilleard denied committing the robbery, although he admitted to being with Rock that day;
 

 • he identified Guilleard in court;
 

 • when Guilleard was stopped, Casey’s driver’s license and credit cards were found in the car, but no money or gun was ever recovered; and
 

 • Carla Bell had rented the car driven by Guilleard when he was arrested.
 

 DISCUSSION
 

 Sufficiency
 

 The defendant argues through counsel that:
 

 • Letitia Casey was not a reliable witness because during the robbery she saw the defendant only briefly and her description of him was without much detail;
 

 • although admitting that she did pick the defendant out of a lineup, her identification was made on the basis of “big eyes”; and
 

 • Elyse Rock was not a credible witness because she received an offer and pled guilty to a reduced charge, and because her testimony was questionable and inconsistent not only with her own prior statements given to Detective Demery, but also with the victim’s testimony.
 

 The state counters that:
 

 • Casey not only identified Guilleard in a photo lineup, but also identified him in open court as the man who was armed;
 

 • the robbers took the store’s money bag, which is confirmed by Rock’s testimony that a green bag and a purse were taken;
 

 • when Guilleard was apprehended, Casey’s driver’s license and a couple of her credit cards were in the car with him.
 

 The provisions of La. R.S. 14:64(A) state,
 

 Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
 

 fiThe provisions of La. R.S. 14:64.3(A) state,
 

 When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:27 and 64.
 

 Our law on review for sufficiency of the evidence is well settled.
 
 [2]
 

 
 *870
 
 The evidence adduced is clearly sufficient to support the conviction for armed robbery (with a firearm). Even discounting the testimony of bjRock, Casey was positive in her identification of the defendant, and her credit cards were found in the vehicle he was driving when he was caught.
 

 Waiver of Jury Trial
 

 The defendant argued, through counsel, that there was no indication that the defendant had validly waived his right to a jury trial. Counsel requested supplementation of the record with transcripts of the jury trial waiver and reserved the right to address the issue after supplementation was complete. We ordered the record be supplemented with the transcript of the proceedings held on August 24, 2007, prior to the bench trial, wherein the defendant waived his right to trial by jury. The transcript plainly establishes a knowing and intelligent waiver by defendant of his jury trial right.
 

 Pro Se Assignments of Error
 

 Guilleard,
 
 pro se,
 
 filed the following 15 assignments of error, none with merit.
 

 (1)
 
 Failure to Read the Bill of Information
 

 The defendant cites no law to support this claim and none exists.
 

 (2)
 
 Ineffective Counsel
 

 Defendant argues that:
 

 • the trial court chastised defendant’s trial counsel for presenting nothing in mitigation of the defendant’s sentence;
 

 • he had several alibi witnesses who were not called;
 

 • he never wanted to waive a jury trial, but counsel insisted on a bench trial, “guaranteeing an acquittal in such proceeding”;
 

 
 *871
 
 • trial counsel had numerous police reports with inconsistent statements made by Rock and Carey but “flatly refused” to use them at trial for impeachment;
 

 17* trial counsel had no DNA analysis done on the red tennis shoes, which he alleges would have shown that he had not worn them, in refutation of Casey’s testimony that the male robber wore red tennis shoes.
 

 Our law on ineffective assistance of counsel is well settled.
 
 [3]
 

 This record is sufficient to reject defendant’s claims of ineffective assistance of counsel. The defendant did not identify any alibi witnesses, did not state what the inconsistent statements in the police reports were, did vindicate on the record that he wanted to waive his right to trial by jury, and admitted being with Rock that day. Further, Casey never testified that the male robber wore red shoes (although she apparently had told Detective Demery that), and even if she had, the absence of his DNA evidence on the shoes would not prove that he was innocent of the crime. This record contains ample
 
 *872
 
 evidence by which to sustain a conviction, notwithstanding any of the alleged claims of ineffectiveness.
 

 (3)
 
 Admission of Hearsay
 

 Bell’s alleged conversation with the defendant, as testified to by Rock, included defendant’s statement, and therefore was not hearsay because it was his own statement offered against him. La. C.E. art. 801(D)(2)(a). Of course, defendant’s alleged statement, “Well, I ain’t really into that,” isn’t particularly inculpa-tory. To the extent the conversation included Bell’s alleged statement that she knew a place defendant could rob, it might be admissible under La. C.E. art. 801(D)(3)(b) as a statement made by a declarant while participating in a conspiracy to commit a crime and in furtherance of the objective of the conspiracy, provided that a
 
 prima facie
 
 case of conspiracy is established. More fundamentally, there was no objection by defendant’s trial counsel to Rock’s statements about the conversation. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841;
 
 State v. Jones,
 
 41,299 (La.App.2d Cir.11/9/06), 942 So.2d 1215.
 

 | fl(4)
 
 Improper Impeachment of Rock
 

 Although the state did play Rock’s recoi*ded statement, which was inconsistent on several points with her trial testimony, there was no objection by defendant’s trial counsel. Furthermore, La. C.E. art. 607 clearly allows a party to impeach his own witness. One purpose of allowing such impeachment is to prevent a party from being damaged by his or her own witness.
 
 State v. Qualls,
 
 40,630 (La.App.2d Cir.1/27/06), 921 So.2d 226. The trial court heard it all, both live and on tape.
 

 (5)
 
 Best Evidence
 

 Absent a showing of prejudice, a conviction will not be reversed on the ground that the best evidence was not produced.
 
 State v. Bennett,
 
 341 So.2d 847 (La.1976). No prejudice was shown when Rock testified and was cross-examined.
 

 (6)
 
 Incomplete Statement
 

 There was no objection by defendant’s trial counsel to the redacted tape played, apparently because the tape makes reference to other crimes of Guilleard.
 

 (7)
 
 Inadmissible Confession of Codefen-dant
 

 This assignment of error also lacks merit because there was no objection by trial counsel and because, in the absence of a showing of prejudice, a conviction will not be reversed on the ground that the best evidence was not produced. There was no prejudice where Rock testified and was cross-examined.
 

 110(8)
 
 Multibill Irregularities
 

 Once again, there was no objection by trial counsel. Actually, there was nothing on this point to which to object. The trial court’s granting of the defendant’s motion to quash cannot reasonably be read to quash both predicate offenses at issue. Instead, the trial court, in granting the defendant’s motion to quash, obviously quashed only one of the two predicate offenses, on grounds that both had been entered on the same day. In fact, the motion to quash alleged that the two pleas entered on the same day should be counted as one and asked that the state show cause why one of the predicates should not be quashed. This was the clear intent of the trial court. To argue otherwise is disingenuous.
 

 
 *873
 
 (9)
 
 Excessive Sentence
 

 Defendant argues that the trial court intended to sentence him to the minimum sentence, which is probably true. His argument is incorrect that the minimum sentence here would be 33 years.
 

 Under La. R.S. 15:529.1(A)(l)(a), if the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence must be for a determinate term of not less than one-half the longest term and not more than twice the longest term for a first offense.
 

 La. R.S. 14:64(B) provides a sentence of from 10 to 99 years at hard labor, all without benefit of parole, probation, and suspension of sentence. One-half of 99 years is 49½ years-the amount of time ordered by the trial [u court. Furthermore, the sentence in this case actually is illegally lenient, as is discussed hereinafter.
 

 (10)
 
 Improper Boykinization in Prior Guilty Pleas
 

 The answer to this assignment of error is found in the provisions of La. R.S. 15:529.1 concerning sentences for second and subsequent offenses. La. R.S. 15:529.1(D)(l)(b) states, in pertinent part, that the presumption of regularity of judgment is sufficient to meet the district attorney’s original burden of proof and that any challenge to a previous conviction which is not made before sentencing may not thereafter be raised to attack the sentence.
 

 (11)
 
 Ineffective Appellate Counsel
 

 The defendant lists 10 transcripts allegedly missing and without which he alleges appellate counsel could not know if errors existed. The same 10 items listed also were requested by defendant in a motion to supplement, which we denied.
 

 Defendant has shown nothing in these transcripts that would allegedly help him. Indeed, one of the transcripts — the hearing at which he waived trial by jury— already had been provided. Defendant has not identified any specific acts or omissions to support his claim. This assignment of error lacks merit.
 

 (12)
 
 Suggestive Photographic Lineup
 

 Defendant argues that the officer conducting the photo lineup advised Casey that they had arrested a suspect, thus priming her to conclude that the suspect was among the six male photos in the lineup. He also asserts that he was the only person in the lineup with “bug-eyes,” and that the victim had [ ^already stated that the robber had bug-eyes. (He also incorrectly alleges that the other 12 photos were of females.)
 

 Our law on analyzing the suggestiveness of lineups is well settled.
 
 [4]
 

 
 *874
 
 Although Casey indicated that she was shown a “book” of photos from which she picked out Guilleard, a discussion among the trial judge and counsel that occurred immediately after evidence was closed indicates that Guilleard is probably correct in stating that Casey was only shown photos of six male suspects. A perusal of those photos indicates that Guilleard does have eyes that are slightly wider open than the other suspects. Since Casey had told police, prior to the photo lineup, that the male robber had “bug-eyes,” it is arguable that the lineup was suggestive. There is no misidentification, however. Casey had the opportunity to view Guilleard 11sfrom a short distance away at the time of the crime, she had described him as tall and slim with a scarf tied on his head and as having eyes that were “real big,” and she demonstrated a high degree of certainty in her in-court identification of Guilleard. Furthermore, trial counsel did not object to the introduction of the photo lineup.
 

 (13)
 
 Insufficiency (Again)
 

 The sufficiency of the evidence has previously been addressed.
 

 (14)
 
 Undisclosed “Bribery” of Codefen-dant
 

 The defendant simply complains about the deal Rock got and asserts that “the full extent of the deal was never disclosed at trial.” However, the defendant offers nothing in support of that assertion, Rock testified at trial, and the wording of this assignment of error is essentially another attack upon the sufficiency of the evidence.
 

 (15)Denial of Right to Produce a Defense
 

 This assignment of error is just more argument about ineffective assistance of counsel in the trial court and on appeal. Those matters have been covered previously.
 

 PATENT ERROR
 

 The sentencing transcript shows that the trial court intended to impose “the minimum statutory sentence as a second felony habitual offender!.]” The trial court was illegally lenient in sentencing Guilleard to 49½ years at hard labor, with only the first 15 years to be served without the benefit of probation, parole, or suspension of sentence, and the balance to be served without the benefit of probation or suspension of sentence.
 

 J^There are two problems with this sentence.
 

 First, even if we only were dealing with a second felony offender who had only been convicted of armed robbery, the minimum sentence would have been 49½ years at hard labor,
 
 all
 
 to be served without benefit of parole, probation, or suspension
 
 *875
 
 of sentence.
 
 See
 
 La. R.S. 14:64 and La. R.S. 15:529.1(A)(l)(a). The court’s language differentiating between the first 15 years and the balance is in error.
 

 Second, La. R.S. 14:64.3 requires, when a firearm is used in the robbery, an additional five years without benefit of probation, parole, or suspension of sentence, to be served consecutively with the base sentence.
 

 We therefore correct the illegally lenient sentence to order that the defendant serve 49½ years at hard labor, all without benefit of probation, parole, and suspension of sentence, to be served consecutively with an additional five-year sentence, without hard labor,
 
 [5]
 
 all without benefits.
 

 We advise the defendant that he has two years from the finality of this conviction and sentence to apply for post-conviction relief, per La. C. Cr. P. art. 930.8.
 

 DECREE
 

 CONVICTION AFFIRMED; SENTENCE AMENDED, AND, AS AMENDED, AFFIRMED.
 

 APPLICATION FOR REHEARING
 

 Before BROWN, WILLIAMS, STEWART, DREW and MOORE, JJ.
 

 Rehearing denied.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [2]
 

 . When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt.
 
 State v. Hearold,
 
 
 *870
 
 603 So.2d 731 (La.1992);
 
 State v. Bosley,
 
 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347,
 
 writ denied,
 
 97-1203 (La.10/17/97), 701 So.2d 1333.
 

 This
 
 Jackson
 
 standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 05-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685;
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 07-1209 (La.12/14/07), 970 So.2d 529.
 
 See also, State v. Bowie,
 
 43,374 (La.App.2d Cir.9/24/08), 997 So.2d 36 (same deference applies to bench trial).
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,-032 (La.App.2d Cir.2/13/08), 975 So.2d 753;
 
 State v. Burd,
 
 40,480 (La.App.2d Cir. 1/27/06), 921 So.2d 219,
 
 writ denied,
 
 06-1083 (La.11/9/06), 941 So.2d 35. This includes the testimony of accomplices. An accomplice is a competent witness to testify against her co-perpetrator even if the prosecution offers her inducements to testify; these inducements weigh on the witness’s credibility.
 
 State v. Jetton,
 
 32,893 (La.App.2d Cir.4/5/00), 756 So.2d 1206,
 
 writ denied,
 
 00-1568 (La.3/16/01), 787 So.2d 299. The credibility of an accomplice's testimony is not within the province of the court of appeal to decide.
 
 Id.
 
 Rather, credibility evaluations are within the province of the trier of fact.
 
 Id.
 
 The fact finder is charged with making a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law.
 
 State v. Casey,
 
 99-0023 (La.1/26/00), 775 So.2d 1022,
 
 cert. denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
 

 [3]
 

 . As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief ("PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930.
 
 State ex rel. Bailey v. City of West Monroe,
 
 418 So.2d 570 (La.1982);
 
 State v. Ellis,
 
 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139,
 
 writ denied,
 
 07-2190 (La.4/4/08), 978 So.2d 325. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy.
 
 State v. Ratcliff,
 
 416 So.2d 528 (La.1982);
 
 State v. Willars,
 
 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673.
 

 The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution.
 
 State v. King,
 
 06-1903 (La.10/16/07), 969 So.2d 1228;
 
 State v. Wry,
 
 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 

 To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel” guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases.
 
 Strickland, supra.
 
 The assessment of an attorney’s performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment.
 
 State v. Grant,
 
 41,745 (La.App.2d Cir.4/4/07), 954 So.2d 823,
 
 writ denied,
 
 07-1193 (La.12/7/07), 969 So.2d 629;
 
 State v. Moore,
 
 575 So.2d 928 (La.App. 2d Cir.1991).
 
 See also, State v. Tilmon,
 
 38,003 (La.App.2d Cir.4/14/04), 870 So.2d 607,
 
 writ denied,
 
 04-2011 (La.12/17/04), 888 So.2d 866.
 

 Second, the defendant must show that counsel’s deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive die defendant of a fair trial,
 
 i.e.,
 
 a trial whose result is reliable.
 
 Strickland, supra.
 
 The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different.
 
 Strickland, supra; State v. Pratt,
 
 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174,
 
 writ denied,
 
 95-1398 (La.11/3/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice.
 
 Strickland, supra; State v. Jordan,
 
 35,643 (La.App.2d Cir.4/3/02), 813 So.2d 1123,
 
 writ denied,
 
 02-1570 (La.5/30/03), 845 So.2d 1067.
 

 [4]
 

 . A lineup is unduly suggestive if the procedure used focuses attention on the defendant. For example, distinguishing marks on the photos may single out the accused, or suggestiveness can arise if sufficient resemblance of physical characteristics and features does not reasonably test identification.
 
 State v. Tucker,
 
 591 So.2d 1208 (La.App. 2d Cir.1991),
 
 writ denied,
 
 594 So.2d 1317 (La.1992), citing
 
 State v. Robinson,
 
 386 So.2d 1374 (La.1980).
 

 Photographs used in a lineup are suggestive if they display the defendant so singularly that the witness’s attention is unduly focused on the defendant.
 
 State v. Smith,
 
 430 So.2d 31 (La.1983);
 
 State v. Tucker, supra.
 
 It is not required that each person whose photograph is used in the lineup have the exact physical characteristics as the defendant. What is required is sufficient resemblance to reasonably test identification.
 
 State v. Smith, supra; State v. Davis,
 
 27,961 (La.App.2d Cir.4/8/96),
 
 *874
 
 672 So.2d 428,
 
 writ denied,
 
 97-0383 (La.10/31/97), 703 So.2d 12.
 

 Even if suggestiveness is proven by the defendant, it is the likelihood of misidentification, and not the mere existence of suggestiveness, which violates due process.
 
 State
 
 v.
 
 Williams,
 
 375 So.2d 364 (La.1979); St
 
 ate v. Davis, supra.
 
 The likelihood of misidentification violates due process when the totality of the circumstances indicates that misidentifi-cation probably occurred.
 
 State v. Brown,
 
 40,769 (La.App.2d Cir.3/08/06), 923 So.2d 976, citing
 
 Neil v. Biggers,
 
 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
 

 When assessing the reliability of an identification, the following factors must be considered: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of his or her prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the length of time between the crime and the confrontation.
 
 State v. Kemp,
 
 39,358 (La.App.2d Cir.3/11/05), 896 So.2d 349,
 
 writ denied,
 
 05-0937 (La.12/09/05), 916 So.2d 1052.
 

 [5]
 

 . This crime occurred on April 26, 2006, at which time La. R.S. 14:64.3 carried no possibility of hard labor.