CARAWAY, J.
|, David Carey Shoupe was convicted as charged of fourth offense driving while intoxicated in violation of La. R.S. 14:98. The state then applied Louisiana’s Habitual Offender Law, and Shoupe was adjudicated a second-felony offender. Shoupe received an enhanced sentence as a second-felony offender of 20 years at hard labor without benefit of parole, probation or suspension of sentence. He appeals his conviction and sentence. We affirm Shoupe’s conviction and amend his sentence to delete all but 60 days of the parole prohibition.

Facts

David Carey Shoupe was arrested in the early morning hours of July 3, 2008, after his vehicle collided with a parked car and he left the scene of the accident in a Shreveport neighborhood. Upon locating Shoupe, the responding officers noticed that he smelled of alcohol, was impaired, staggered, stumbled and slurred his speech. When Shoupe refused to provide a breath sample for analysis he was subsequently charged with driving while intoxicated, fourth offense, on the grounds that he operated a motor vehicle “while under the influence of alcoholic beverages and/or prescription drugs.” A unanimous jury convicted Shoupe as charged on May 13, 2010. Shoupe was adjudicated a second-felony offender and was sentenced to 20 years at hard labor without benefit of parole, probation, or suspension of sentence. After the denial of a timely motion to reconsider sentence, this appeal ensued.[1]
| ^Discussion
Shoupe’s appeal includes an argument that the evidence produced at trial was insufficient to support his conviction. When a sufficiency claim is raised, it should be the first claim considered. Other errors are irrelevant if the evidence is insufficient to support a conviction. Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).
Specifically, Shoupe contends that the state failed to prove beyond a reasonable doubt that he was under the influence of alcohol or drugs on July 3, 2008, and that the accident occurred because he was “exhausted.” Further Shoupe argues that an eyewitness to his condition testified that he *511 did not stagger “that much,” and the alcoholic smell could have been transferred from his girlfriend (who was drinking), after he kissed her good night. He finally argues that the stagger occurred on account of his bad knee, and he notes there was no chemical test to confirm he ingested alcohol.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 08-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. |sart. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 09-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529. See also, State v. Guilleard, 44,482 (La.App.2d Cir.12/9/09), 26 So.3d 865, writ denied, 10-0101 (La.9/3/10), 44 So.3d 696 (same deference applies to bench trial).
In 2008, the relevant provisions of La. R.S. 14:98 read as follows:
(1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(a) The operator is under the influence of alcoholic beverages; or
(b) The operator’s blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; or
(c) The operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964; or
(d)(i) The operator is under the influence of a combination of alcohol and one or more drugs which are not controlled dangerous substances and which are legally obtainable with or without a prescription.
(ii) It shall be an affirmative defense to any charge under this Subparagraph pursuant to this Section that the label on the container of the prescription drug or the manufacturer’s package of the drug does not contain a warning against combining the medication with alcohol.
|4(e)(i) The operator is under the influence of one or more drugs which are not controlled dangerous substances and which are legally obtainable with or without a prescription.
(ii) It shall be an affirmative defense to any charge under this Subparagraph pursuant to this Section that the operator did not knowingly consume quantities of the drug or drugs which substantially exceed the dosage prescribed by the physician or the dosage recommended by the manufacturer of the drug.
*512 In order to convict an accused of driving while intoxicated, the prosecution must prove that the defendant was operating a vehicle while under the influence of alcohol or drugs. La. R.S. 14:98(A)(l)(a); State v. Minnifield, 31,527 (La.App.2d Cir.1/20/99), 727 So.2d 1207, writ denied, 99-0516 (La.6/18/99), 745 So.2d 19.
Some behavioral manifestations, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. State v. McDonald, 33,013 (La.App.2d Cir.3/1/00), 754 So.2d 382, 386; State v. Pitre, 532 So.2d 424 (La.App. 1st Cir.1988), wiit denied, 538 So.2d 590 (1989). It is not necessary that a conviction for DWI be based upon a blood or breath alcohol test, and the observations of an arresting officer may be sufficient to establish a defendant’s guilt. Intoxication is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330 (La.1983); State v. Blackburn, 37,918 (La.App.2d Cir.1/28/04), 865 So.2d 912; State v. McDonald, supra. A defendant’s refusal to take the breath test is admissible at a DWI prosecution; the weight of the evidence is left to the trier of fact. La. R.S. 32:666(A)(3); State v. Dugas, 252 La. 345, 211 So.2d 285 (1968), cert. denied, 393 U.S. 1048, 89 S.Ct. 679, 21 L.Ed.2d 691 (1969); State v. Blackburn, supra; State v. Washington, 498 So.2d 136 (La.App. 5th Cir.1986).
Is At trial of this matter, the state called Shreveport Police Officer Ariella Ortis to testify. Officer Ortis testified that she was on patrol the night of July 3, 2008, and responded to a hit-and-run complaint at the intersection of Thornhill and Gladstone. Shoupe’s van had collided with another vehicle and the van was missing a tire. Officer Ortis could not describe the van, but she recalled that the other vehicle was parked. There were no other vehicles involved, and the vehicles were unoccupied when she arrived. Based on Officer Ortis’ observations, it was her opinion that the driver of the van “was at fault for the accident.”
Officer Ortis testified that Shoupe was found about two or three blocks from the scene of the accident. He was walking alone and “he appeared [to be] impaired.” When Officer Ortis approached Shoupe, he admitted his involvement in the hit-and-run accident. Shoupe was arrested and returned to the scene where he admitted to being the driver of the minivan although he could not remember what happened in the accident.
Based on the position of the vehicles, Officer Ortis concluded that Shoupe was driving south on Gladstone or Thornhill, and the other vehicle was parked “on the other side of the street.” Officer Ortis concluded that Shoupe drove outside his lane, and veered “all the way to the left.” Officer Ortis saw gouge marks all the way down the street, but she did not know where they began. She believed they were caused by Shoupe when he drove without a tire. The police never located the tire.
Officer Ortis testified that Shoupe smelled like alcohol and staggered when he walked. Although she did not know what time she responded to | fithe call, she said “it was about the middle of the night.” Officer Ortis testified that the street was fairly well lit, and that Shoupe should have seen the parked car.
The testimony of two other police officers who also observed Shoupe at the scene corroborated Officer Ortis’s conclusion regarding Shoupe’s intoxication. Officer Jeffrey Couch testified that Shoupe claimed to be walking home when he was arrested. Shoupe said that “he lived with his mother” a “block or two” from the crash site. Shoupe also reported to Offi *513 cer Couch that he had recently had knee surgery.
Officer Anthony Kelly testified that he performed the Horizontal Gaze Nystagmus test on Shoupe, and a dashboard video of the test was introduced. Shoupe scored six clues of intoxication, and Officer Kelly could “detect the odor of alcoholic beverage[s] on him.” According to Officer Kelly, Shoupe said he “didn’t have any alcoholic beveragefs], but he was on Xanax ... Soma and Lortab.”
Knowing those drugs enhanced the effect of alcohol, Officer Kelly believed Shoupe was impaired. He also testified that Shoupe exhibited “slurred speech,” imbalance, and an inability to follow directions. Officer Kelly recalled a scar on Shoupe’s left knee.
Officer Kelly testified that Shoupe was transported to selective enforcement[2] where he refused the walk-and-turn and one-legged-stand tests. He was read his rights and signed a form indicating his refusal. The forms were introduced into evidence, and indicated Shoupe’s level of | impairment as “extreme,” the odor of alcohol was “moderate” and that Shoupe was “falling” and “swaying” and his speech was “incoherent,” “stuttering,” and “slurred.” Officer Kelly testified that Shoupe “dozed off’ during his investigation.
Shoupe also refused to submit to a Breathalyzer test. Officer Kelly testified that was unusual because Shoupe claimed he had not consumed alcohol. While he was in the observation room, Shoupe’s impairment became “more evident” as the investigation progressed.
At some point Shoupe asked “about having — doing a blood test.” Officer Kelly testified that blood tests customarily occur when a suspect is injured or hospitalized and that selective enforcement does not have the capability to take blood for a blood kit at the police station. Officer Kelly testified that blood tests must be done at the hospital. Blood tests are not typically conducted during DWI investigations.
On cross-examination, Officer Kelly confirmed that the selective enforcement room contains a video camera which records everything that occurs in the room. To activate the camera, an officer must turn it on upon entering the room. Officer Kelly said he initiated the video recorder at the beginning of his investigation. When his investigation concluded, he deposited the VHS recording with the sergeant or supervisor in charge of the property room. He did not know how or why it later became lost. He had not been in touch with the video since it was done in 2008.
[sJustin Lee Price was in a nearby residence and responded after the collision. He called the police in the immediate aftermath of the crash. Price testified to his encounter with Shoupe, as follows:
So we went down and asked him if he was okay. And he said he was fine and everything. He didn’t know what happened or how it happened or whatever. And then so I proceeded to call the cops, and I said, I’m calling the cops for you to get some help. Okay. And he was— as soon as I said that, he turned around, and he just — he tossed me his keys and said I’m too F’d up for this, I’ve got to go home, and he started to walk off from the scene.
In addition to his keys, Shoupe left his driver’s license with Price.
*514 The defense called Shoupe’s mother to the stand. Doris Shoupe testified that she resides at 919 Elmwood Street, Shreveport, Louisiana and that Shoupe was living with her when he was arrested on July 3, 2008. She testified that her son had undergone surgery on his neck, back, and knee and had to wear a knee brace for a while. He was arrested shortly after knee surgery, and he was on medication for pain.
Doris Shoupe produced prescription receipts which were entered into evidence and demonstrated Shoupe had filled prescriptions through June 2008. Ms. Shoupe was aware of her son’s previous DWI convictions. She testified that Shoupe did not drink alcohol in her presence and that she did not have any alcohol in the house.
Shoupe testified in his own defense. He admitted that he had been convicted of DWI on four prior occasions in the last 10 years. He had also been convicted of aggravated burglary, cruelty to animals, and violating a restraining order. Shoupe received a knee brace after surgery and attributed his alleged “staggering” to the fact that he could “barely walk.” Shoupe | testified that he endured other surgeries as well and had received numerous prescriptions on account of his health. He had been taking Soma and Lortab since his neck/back surgery. Shoupe testified he was taking the drugs as prescribed, and was well aware of his tolerance. Shoupe also discussed the Xanax found in his van. He testified it was prescribed to alleviate his anxiety and schizophrenia, and that he did not abuse it.
On the night of his arrest Shoupe testified that he was on his way home, after spending the day with a woman “to make [his] ex jealous.” He attributed his smell of alcohol on his breath to his kissing of the woman who had been drinking.
While driving down Kings Highway, he “had a blowout,” but he decided to continue down Thornhill. He had “another blowout,” and that is when he “lost control.” Shoupe testified that he “nicked” the other car, because it was almost in the middle of the road, and the police arrived shortly thereafter. Shoupe testified he was not trying to flee the scene.
In the selective enforcement room, Shoupe confirmed that he refused to provide a breath sample to conduct a Breathalyzer test. He said he had “brushed his teeth and used some Listerine” earlier in the night and was concerned a sample would result in a false-positive. Accordingly, he requested “a blood test and urinalysis” instead. Shoupe vehemently denied drinking before his arrest but admitted to taking his medication earlier in the day.
Shoupe addressed the “walk-and-turn” and “one-legged-stand” tests during his testimony. According to Shoupe, his knee would not allow him|into perform the tests. Despite that, he claims he was cooperative with the officers in the selective enforcement room.
Viewing this evidence in a light most favorable to the state, we find it sufficient to convict Shoupe of fourth offense driving while intoxicated. We note that Louisiana’s definition of the offense of driving while intoxicated includes operators of vehicles under the influence of a combination of alcohol and one or more drugs which are legally obtained with or without a prescription. The bill of information reflected such combined use.
Shoupe admitted he was driving a minivan at 3:00 a.m. from Bossier City to Shreveport, had taken prescription drugs at some time before the accident, crashed into a parked vehicle, abandoned his minivan and left the scene. Before he did, the evidence shows he gave his keys to an *515 unknown individual and used terms which indicated his impaired state. Three officers observed Shoupe’s slurred speech, imbalance and inability to follow directions. His breath smelled like alcohol and he failed the Horizontal Gaze Nystagmus test. At the police substation, he refused to submit a breath sample for chemical analysis. He was unconscious at various times after his arrest, and he admitted prescription drug use during the day. Although Shoupe offered a limited explanation for his conduct, his testimony was uncorroborated and contradictory. The jury obviously rejected his rendition of the facts regarding whether he had been drinking. With Shoupe’s admission of his previous convictions and the officers’ observations, the remaining evidence is sufficient to show that Shoupe | n operated a motor vehicle while under the influence of alcohol and drugs. Thus, this assignment of error regarding the sufficiency of the evidence is without merit.
Shoupe next argues that he was denied the right to a fair trial because the state failed to provide him with the video recording of Officer Kelly’s investigation in the selective enforcement room the night he was arrested. Specifically, Shoupe maintains he was denied the opportunity to examine the tape which could have produced exculpatory evidence and rebutted the testimony of the arresting officers. He alleges the tape was lost because of the state’s “cavalier treatment of the recording,” and he requests this court vacate his sentence and overturn his conviction. During trial, the state maintained the position that the tape was inadvertently lost.
On April 12, 2010, before trial began, Shoupe filed a “Motion to Dismiss for Failure to Disclose Potential Favorable Evidence.” Although Shoupe received a dashboard recording of his arrest, he did not receive a recording from the police station selective enforcement room. Shoupe alleged that the state lost the police station video and deprived him of potentially favorable evidence that would show he was not intoxicated at the time of his arrest. He moved to dismiss the case and, after a hearing on the matter, the court denied the motion. Shoupe’s request for reconsideration of the motion was also denied.
Due process requires that the state provide a defendant with any exculpatory evidence in its possession which is material to the defendant’s guilt or punishment, regardless the good faith or bad faith of the prosecutor. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215 (1963). Where a defendant claims that his due process rights have been violated due to the state’s failure to preserve potentially useful evidence, the defendant has the burden of showing that the state acted in bad faith. Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). In California v. Trombetta, 467 U.S. 479, 488-489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984), the United States Supreme Court explained:
Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect’s defense. To meet this standard of constitutional materiality, [... ] evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.
Id., 467 U.S. at 488-489, 104 S.Ct. at 2534 (internal citations omitted).
In the very similar case of State v. Schexnayder, 96-98 (La.App. 5th Cir.11/26/96), 685 So.2d 357, writ denied, *516 97-0067 (La.5/16/97), 693 So.2d 796, cert. denied, 522 U.S. 839, 118 S.Ct. 115, 139 L.Ed.2d 67 (1997), the defendant claimed that the state destroyed his car, which deprived him access to important exculpatory evidence. At trial, the officers-testified that an inventory search of his car was conducted and no evidence was seized from the car and no photographs were taken. The car was later destroyed. The defendant argued that he was deprived of the opportunity to impeach state witnesses without the car as evidence. The appellate court determined that the defendant did not offer sufficient proof that the state acted in bad faith in destroying the car and that the defendant failed to show that the car | ishad apparent exculpatory value prior to its destruction. Id., 685 So.2d at 365-66.
In State v. Harris, 01-2730 (La.1/19/05), 892 So.2d 1238, cert. denied, 546 U.S. 848, 126 S.Ct. 102, 163 L.Ed.2d 116 (2005), the Louisiana Supreme Court found no merit in the defendant’s argument that his due process rights were violated when DNA evidence was destroyed and he was prevented from testing it. The court noted that the defendant did not allege bad faith by the state in the evidence’s destruction and the destruction of the DNA samples “allowed defense counsel to criticize the police’s investigation of the crime and cast doubt on the police’s handling of the entire case.” Id., 892 So.2d at 1253, n. 31.
In this matter, Shoupe was allowed unlimited cross-examination of Officer Kelly regarding the tape’s disappearance. Shoupe has neither alleged nor proven bad faith on the part of the state in the loss of the evidence. Moreover, the evidence revealed Shoupe’s intoxication by the reports of the officers at the scene, while later, in the selective enforcement room, no walking or standing tests were administered. Therefore, Shoupe has not demonstrated the missing tape’s apparent • exculpatory value. Considering the facts and applicable law, we find that Shoupe has failed to sustain his burden of showing that his due process rights were violated or that he was denied a right to a fair trial. This assignment is without merit.
In his pro se assignment of error, Shoupe argues that the district court erred when it denied his supplemental motion to quash the state’s multiple offender bill of information. He alleges that because his conviction was already enhanced, the imposition of a habitual offender adjudication violated the Supreme Court’s holding in State v. Campbell, 03-3035 (La.7/6/04), 877 So.2d 112. Shoupe requests this court to “vacate his multiple bill conviction” and remand the matter to the district court for resentencing.
Shoupe filed a motion to quash the habitual offender bill of information and the court heard arguments on the motion prior to the adjudication hearing. Finding that case law sanctioned such an enhancement, the trial court denied Shoupe’s motion and ultimately adjudicated him a second-felony offender.
In State v. Campbell, supra, the Supreme Court considered a case in which the defendant was charged as a habitual offender after being convicted of driving while intoxicated, third offense. The state charged him as a third-felony offender on the basis of two non-DWI felonies. The trial court granted his motion to quash which was affirmed by this court. State v. Campbell, 37,485 (La.App.2d Cir.10/16/03), 859 So.2d 223. The Supreme Court granted writs to consider “whether La R.S. 14:98 prohibits the state from adjudicating repeat DWI offenders as habitual offenders under La. R.S. 15:529.1.” State v. Campbell, 877 So.2d at 113.
*517 In its decision, the Supreme Court held that “a DWI third-offender cannot be sentenced pursuant to Louisiana’s Habitual Offender Law, even where that defendant has two prior non-DWI felony convictions.” The court reasoned as follows:
While Louisiana’s Habitual Offender Law prohibits probation or suspension of sentence for any sentence imposed under its provisions, the more specific statute, which applies solely to operating a vehicle while intoxicated, specifically provides ‘notwithstanding any other | ^provision of law to the contrary ... the remainder of the sentence shall be suspended....’ Not only is LaJEtev. Stat. 14:98 the statute specifically directed to DWI third offenders, but the plain language of that statute instructs the sentencing court in no uncertain terms that it must not stray from the sentencing provisions contained in that statute, even in the event those terms conflict with other provisions of law.
The court concluded that the statutory language set forth in La. R.S. 14:98(D)(1) mandated a suspended sentence and treatment for substance abuse disorder notwithstanding any other provision of law to the contrary. Therefore, any habitual offender adjudication in accordance with La. R.S. 15:529.1(G) would preclude the court from ordering a sentence which complied with La. R.S. 14:98(D). Because the two statutes could not be harmonized in Campbell, a DWI third offender could not be sentenced under the Habitual Offender Law.
Nevertheless, a year after Campbell, supra, the Legislature amended La. R.S. 14:98(D) & (E) to remove the provisions mandating suspension of sentence and treatment during probation for third and fourth offense DWI. 2005 La. Acts 497. Whereas La. R.S. 14:98(D) & (E) previously required the court to impose probation (and mandate treatment), Act 497 provided (in pertinent part) that “the court, in its discretion, may suspend all or any part of ... the sentence of imprisonment.” 2005 La. Acts 497.
The 2005 legislative amendments of the language of La. R.S. 14:98 thus resolved the conflict between the felony DWI sentencing scheme and the Habitual Offender Law. The Supreme Court based its opinion on the legislature’s “clearly stated” intention for DWI felonies “to embrace treatment measures in preference to incarceration.” Thereafter, the | ^legislature acted with a stated intent of providing “for the court’s discretion in suspending a portion of the criminal sentence for third, fourth, and subsequent offenses ... and in ordering an offender to substance abuse treatment.” 2005 La. Acts 497. Thus, with this amendment, the 2001 sentencing scheme reflected in La. R.S. 14:98 at the time of Campbell was modified. The removal of mandatory suspension of sentence and the attendant substance abuse treatment for third and fourth DWI offenders by the Legislature removed the conflict identified in the Campbell decision. In 2005, suspension of sentence became an option for the trial judge imposing a sentence for third and fourth DWI offenders. This change in DWI third and fourth sentencing provisions places those provisions in the same category as any other felony sentence with benefit of probation which may nevertheless be enhanced under La. R.S. 15:529.1.[3] Accordingly, insofar as Campbell determined a specific conflict precluding further enhancement of DWI offenses under the Habitual Offender Law, *518 its statutory construction is no longer applicable after the amendment to La. R.S. 14:98.
Any broader prohibition which may be gleaned from Campbell, supra, regarding the issue of double enhancement (double use of Shoupe’s recidivist status) has been implicitly rejected by the Supreme Court’s later pronouncement in State v. Baker, 06-2175 (La.10/16/07), 970 So.2d 948, cert. denied, 555 U.S. 830, 129 S.Ct. 39, 172 L.Ed.2d 49 (2008). Baker involved the enhancement under La. R.S. 15:529.1 of a defendant convicted |17of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. Baker pled guilty to the firearms violation which was based upon a 1996 conviction for aggravated battery. Thereafter the state filed an habitual offender bill of information seeking to enhance Baker’s firearms sentence based upon a 1999 illegal possession of stolen things conviction. Thus the stated relied on separate convictions for charging Baker with the weapons offense and the habitual offender bill. Baker argued that the multiple offender adjudication was improper under State v. Firmin, 354 So.2d 1355 (La.1978). Firmin denied the use of the Habitual Offender Law based upon a different felony than the underlying felony for the firearms conviction on the grounds that the double use of the defendant’s recidivist offender status and the double use of any particular prior felony conviction was prohibited.
In Baker, the Supreme Court therefore concluded that a sentence imposed under the firearms statute could be further enhanced under the habitual offender statute when two different offenses are used to enhance.[4] The court concluded that nothing in the language of either the firearms statute or the Habitual Offender Law prohibited the enhancement of a firearms conviction or that “the combination of these two statutes would lead to a result unintended by their purposes.”
This court has extended the Baker rationale to possession of marijuana, third offense, in violation of La. R.S. 40:966(E). State v. Brooks, 43,613 (La.App.2d Cir.10/29/08), 997 So.2d 688, writ denied, 11808-2973 (La.12/18/09), 23 So.3d 930. The Baker reasoning applies here as well. With the authority of La. R.S. 15:529.1, which was specifically evaluated by the Supreme Court in Baker, nothing in the provisions of La. R.S. 14:98 prohibits a penalty imposed under the DWI statute from being subsequently enhanced under the Habitual Offender Law. Accordingly, Shoupe’s argument is rejected.
Shoupe alleges his sentence is unconstitutionally excessive under the facts and circumstances of this case and is “nothing more than purposeless and needless imposition of pain and suffering.” Shoupe also complains that the negative factors of La. C. Cr. P. art. 894.1 which are to be considered by the court in fashioning a sentence are not present under the facts of this case Because Shoupe failed to raise the issue of La. C. Cr. P. art. 894.1 noncompliance in his motion to reconsider sentence, however, he is relegated to having this court consider the bare claim of constitutional excessiveness on review. State v. Mims, 619 So.2d 1059 (La.1993); State v. Williams, 45,755 (La.App.2d Cir.l 1/3/10), 54 So.3d 1129.
A sentence will violate Article 1, § 20 of the Louisiana Constitution if it is grossly out of proportion to the seriousness of the offense, or nothing more than a purpose *519 less and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864. The trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, a sentence should not be set aside as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Thompson, 25,583 (La.App.2d Cir.1/19/94), 631 So.2d 555.
Shoupe was sentenced as a second-felony offender, subject to a sentencing range of 15-60 years, without the benefit of probation or suspension of sentence. Shoupe received a sentence of 20 years at hard labor without benefit of probation, parole, or suspension of sentence. Prior to sentencing Shoupe, the court noted its consideration of his criminal record and that the likelihood of Shoupe’s committing another DWI was great. The court determined to show Shoupe “a little mercy” and sentenced him at the lower end of the possible sentencing range.
The facts surrounding Shoupe’s conviction of fourth offense driving while intoxicated included his crashing into a parked vehicle, abandoning his vehicle and the scene of the accident. He did not cooperate with the police investigation, and he has shown no remorse for his offense. Shoupe has a criminal history including convictions for aggravated burglary, cruelty to animals, and violating a restraining order. This conviction is Shoupe’s seventh DWI. He has a history of assaultive behavior in his criminal history as well as the above-noted serious offenses. Shoupe has obviously failed to benefit from prior leniency in sentencing and has evidenced no ^rehabilitation from his alcohol dependency. Under these facts and circumstances the imposed sentence of 20 years does not shock the sense of justice and is adequately tailored to this defendant. This assignment of error has no merit.
We note an error patent on the face of the record. La. R.S. 15:529.1(G) provides that any sentence imposed under the provisions of this section (Habitual Offender Law) shall be at hard labor without benefit of probation or suspension of sentence. Regarding the imposition of a sentence without benefit of parole, the conditions imposed on the sentence are those called for in the sentencing provisions for the underlying felony offense. State v. Nickles, 46,189 (La.App. 2 Cir. 4/13/11), 60 So.3d 728; State v. Richard, 550 So.2d 300 (La.App. 2d Cir.1989). The sentence conditions required by La. R.S. 15:529.1(G) are additions to, rather than replacements of, those conditions required by the sentencing provisions for the underlying offense. State v. Nickles, supra; State v. Robinson, 46,330 (La.App.2d Cir.2/18/11), 54 So.3d 1292.
On the date of the crime, fourth offense DWI (La. R.S. 14:98(E)) mandated that the first 60 days of the sentence be imposed without the benefit of parole, probation or suspension of sentence. Although the statute granted the court the authority to suspend “all or any part” of the remaining sentence, it did not grant the court the authority to extend the parole restriction beyond 60 days. Accordingly, we amend the defendant’s sentence to provide that only the first 60 days of the sentence be served without benefit of parole.
*520 I21 Decree
For the foregoing reasons, Shoupe’s conviction is affirmed. His sentence is amended to provide that only the first 60 days of the sentence are to be served without benefit of parole, and, as amended affirm the sentence.
CONVICTION AFFIRMED; SENTENCE AMENDED AND, AS AMENDED, AFFIRMED.

. In addition to a brief filed by Shoupe's appellate counsel, Shoupe has also submitted a pro se brief.

. Officer Jeffrey Couch testified that selective enforcement is "the DWI unit, where we process anyone for suspected DWI.”

. With the change in sentencing for La. R.S. 14:98 after Campbell, we are unpersuaded that the legislature’s retention of the phrase "notwithstanding any other provision of law to the contrary" is alone sufficient to lead to a different conclusion.

. The court declined to address the legality of habitual offender enhancement with the same offenses,