BROWN, C.J.
| defendant, John Lee Bass, was charged by bill of information with forcible rape, in violation of La. R.S. 14:42.1.[1] The charge was amended thereafter when defendant was charged by grand jury indictment with aggravated rape, in violation of La. R.S. 14:42. After a jury trial, defendant was found guilty of the responsive verdict of forcible rape. He was sentenced to 40 years at hard labor and ordered to register as a sex offender. On appeal, defendant challenges the sufficiency of the evidence and contends that his sentence is excessive. We affirm defendant’s conviction, *1243 amend defendant’s sentence to include the restriction of benefits for the first two years, and, as amended, affirm, and remand with instructions.
FACTS
On May 22,2014, defendant was charged by bill of information with forcible rape of L.R. on the Jackson Park trail in More-house Parish. At arraignment, defendant pled not guilty. On January 27, 2015, the state filed a grand jury indictment, which amended the charge to aggravated rape. Defendant entered a plea of not guilty on January 29, 2015.
On December 7, 2015, defendant’s trial commenced. At trial, the state called six witnesses. The state’s first witness was defendant’s brother, John Willie Bass, who testified that he was charged as a co-defendant for the rape of L.R. John Willie testified that he pled guilty to forcible rape in exchange for a 20-year sentencing cap. John Willie asserted that although he pled guilty, he “did not admit to rapin’ nobody” and only pled guilty on the advice of his lawyer. John Willie admitted that he knew L.R., but denied 12that she attended a party at his parents’ home prior to her assault. John Willie also stated that, when he was questioned by police, he told them that he had consensual sex with L.R. bn several occasions, including the day of the alleged rape. According to John Willie, he and several of his “home boys,” Leroy and “Zem,” had sex with L.R. that day.
The factual basis that was read during John Willie’s guilty plea colloquy was played off the record and outside of the presence of the jury. Once the jury returned to the courtroom, John Willie testified that the factual basis, read at his guilty plea, did not accurately portray what occurred on the night of the alleged rape. John Willie further stated that when he pled guilty, he was simply acknowledging that he understood the factual basis, not admitting that it was an accurate representation of what occurred. A copy of the minutes stating that John Willie was sentenced to 20 years for the rape of L.R. was admitted into evidence.
On cross-examination, John Willie testified that neither he nor defendant was with L.R. when she was allegedly raped. He further stated that he only pled guilty because he was told by his counsel that he would receive ten years in' jail, which would supposedly “run concurrent with [John Willie’s] parole time,” and that “the deal didn’t go through.” He testified that this ten-year sentence was why he pled guilty to forcible rape. John Willie then stated he did not understand the charges to which he pled guilty. John Willie also admitted to being a convicted felon.
Rosheka Johnson testified next. Ms. Johnson stated that she encountered L.R. shortly after the alleged rape. L.R. was walking up the road toward her. Ms. Johnson. could see that L.R. was crying and shaking. L.R. appeared to have been in a struggle; she had grass in her hair and was Invisibly upset. Ms. Johnson testified that she asked L.R. what was wrong, and L.R. told her that she had been raped. Ms. Johnson called the police and waited with L.R. until the officers arrived.
L.R. testified that she was raped by defendant and his brother, John Willie, on April 26, 2014, L.R. stated that she attended a party at defendant’s parents’ home the evening she was attacked. At the party, L.R. drank about a 12-pack of beer and then argued with defendant’s cousin, “Punkin.” After the argument, around 11:30 p.m., L.R. testified that she left the party alone arid began walking home through Jackson Park. According to L.R., she was wearing a t-shirt, underwear, and blue jean shorts that evening. As she walked through the park, L.R. heard a noise be *1244 hind her. The noise came closer, frightening L.R., and she began to run. As L.R. was running, she heard a voice behind her say, “I told you don’t run. I told you don’t run,” Someone then grabbed L.R.’s shirt and hair from behind and threw her to the ground. L.R. testified that she was lying on her stomach, but. she managed to see the faces of her assailants, whom she identified as John Willie and defendant. L.R. also testified that she fought John Willie and defendant, telling them to stop, but neither did.
L.R. then testified that while defendant attempted to force his penis into her mouth, a third person, J.D., came upon the scene and said, “[n]o, that’s wrong.” But, instead of helping her, J.D. left the scene, and the assault continued. L.R. stated that defendant held her down while John Willie took off her shorts and raped her. During the attack, L.R. heard defendant cheer John Willie on, and defendant stated that “I want some of that too.” When John Willie finished raping L.R., he switched positions with his brother and held L.R. down as defendant raped her. After defendant Lfinished, the brothers switched positions again, and John Willie raped L.R. a second time. When the attack ended, L.R. testified that she struggled to gather her belongings, and defendant and John Willie left her lying on the ground. L.R. walked toward the street, where she encountered Rosheka Johnson, She told' Ms. Johnson that she had been raped by John Willie and defendant. L.R. further testified that she never had’sexual relations with either man before, and she did not have sex with anyone else on the day of her attack. During her testimony, L.R. showed the jury the pair of shorts she was wearing the night of the attack and stated that defendant and John Willie broke the shorts’ zipper as they were removing them.
On cross-examination, L.R. denied having either consensual oral or vaginal sex with defendant on thé day she was attacked. L.R. also denied ever accusing anyone else of raping her.[2] L.R. stated that she had lived with John Willie and defendant’s parents for approximately two years prior to the attack, but neither brother lived in the home at the same time as L.R. She also testified that right after the attack, she did not use the restroom or do anything to alter the condition of her vaginal area. Finally, L.R, stated that after the- attack, she could not locate her underwear.
Captain Keesonyá Lynch,[3] an officer with the Bastrop Police Department, testified that on April 26, 2014, she was dispatched to 501 Jackson Street concerning an alleged assault. Upon arriving at the scene, |sCpt. Lynch made contact with L.R. and observed that she appeared to have been in an altercation. According to Cpt. Lynch, L.R.’s hair was “all over her head,” her shirt was torn, and L.R.’s shorts were ripped open at the waist. Cpt. Lynch noted that L.R. was not wearing underwear, and she appeared to be shaken up. Cpt. Lynch testified.that L.R. admitted to' being sexually assaulted by defendant and John Willie. Cpt. Lynch also testified that she arrested John Willie and defendant shortly after meeting with' L.R. Finally, Cpt. Lynch noted that she was not *1245 present when the rape kit was collected, and she sent her report to Cpt. Anthony Evans. A photograph of the Jackson Park trail was admitted during Cpt. Lynch’s testimony.
Captain Anthony Evans, another officer with the Bastrop Police Department, testified next. Cpt. Evans testified that he was the chief of detectives in April of 2014. Cpt. Evans stated that on April 26, 2014, he received a call concerning a sexual assault and first encountered defendant and John Willie at the police station. Cpt. Evans testified that he advised defendant of his Miranda rights,'[4] and defendant indicated that he understood his rights. Defendant did not appear to be intoxicated or under the influence of drugs when he signed the rights waiver form, which was admitted into evidence. Both Cpt. Evans and Cpt. Lynch were present during defendant’s interview, which took place on April 27, 2014, between 12:53 and 1:01 a.m. A recording of defendant’s interview was then played for the jury. During the interrogation, defendant first denied having sex with L.R. However, after Cpt. Evans indicated that a DNA swab would be-taken from him as part of L.R.’s rape kit, defendant claimed to have had consensual sex with L.R. | fin his bedroom during the party around 11:00 p.m. on April 26, 2014. The other party guests were in the living room playing cards, according to defendant. He indicated that he and L.R. have had a casual sexual relationship since 2008. Defendant testified that L.R. was extremely intoxicated at the party. According to defendant, she drank about “six or seven cases” of beer. When asked about the number of people at the party, defendant stated that only six people were present.
Cpt. Evans testified that on the day after the attack, he took L.R. to the crime scene, and she pointed out where on the trail the rape occurred. They tried to locate her missing underwear, but were unable to do so. Crime scene pictures taken by Cpt. Evans were admitted into evidence and published to the jury. Cpt. Evans also testified that he collected the rape kit, DNA swabs from John Willie and defendant, L.R.’s shorts, and L.R.’s blood samples and delivered them to the crime lab for testing. These items were also admitted into evidence during Cpt. Evans’ testimony.
Katie Traweek, a forensic DNA analyst with the North Louisiana Crime Lab, testified that she served as the primary analyst in defendant’s case. Traweek stated that she conducted DNA testing on the following items submitted for testing: a physical recovery kit from L.R., which contained swabs taken from different parts of L.R.’s body, a pair of shorts, a blue bra, a reference sample from John Willie, another reference sample from defendant, blood samples and a urine sample from L.R. After analyzing the evidence, Traweek testified that defendant’s DNA was found on L.R.’s external genitalia swab. She also stated that defendant was excluded as a donor of the DNA from four of the six swabs. Traw-eek’s report, which detailed her findings, was admitted into evidence.
|7The state rested after Traweek’s testimony, and for their first witness, the defense recalled Cpt. Lynch, who testified that no official photo lineup was conducted during the investigation. According to Cpt. Lynch, L.R. was shown photos of only defendant and John Willie because she had clearly identified the two men as her attackers, having known them for years.
Next, Angela Brantley, defendant’s cousin, testified that she was present at the party on the night L.R. was attacked. *1246 Angela claimed that she witnessed L.R. and defendant having sex in the bathroom. Angela further testified that the activity-appeared to be consensual but noted that L.R. appeared to be intoxicated. On cross-examination, Angela stated that she never told this story to the police.
Glenda Brantley, defendant’s older sister, testified that she was also present at the party, having arrived at her parents’ home around 1:30 p.m. on April 26, 2014. According to Glenda, when she got to her parents’ house, she went to the back bedroom to put her purse on the bed and witnessed L.R. performing oral sex on defendant. Later, Glenda saw L.R. leave the bedroom and said that.L.R. appeared to be intoxicated. Glenda testified that she told L.R. to go home. L.R. fell on the grass in the front yard as she was leaving the party. Glenda further testified that Bass left that party at some point, but returned to the party prior to approximately 1:30 a.m. on April 27, 2014.[5]
Annie Bass (“Annie”), Bass’ mother, testified next. Annie testified that she was present at the party the night of the alleged rape. Annie stated that L.R. was drinking heavily and appeared very intoxicated while at the | «party. Annie further noted that, at some point, Glenda, not Angela, told Annie that Bass and L.R. were having sex in the bathroom.
Defendant testified that he and L.R. engaged in consensual oral and vaginal sex on the night of April 26, 2014. Defendant denied raping L.R. When asked why he never told the police that Glenda and Angela supposedly walked in on him and L.R. at various times in the evening, defendant stated that he didn’t know, “you should ask [Glenda and Angela].”
The defense rested after defendant’s testimony. The state • then recalled Cpt. Evans, who testified that defendant never told the officer that defendant and L.R. had engaged in oral sex at the party. Cpt. Evans further stated that defendant admitted to having sex with L.R. in the bedroom, not the bathroom, during the party at his parents’ house.
On December 10, 2015, the jury found defendant guilty of the responsive verdict of forcible rape. On January 26, 2016, defendant was sentenced to 40 years at hard labor and was ordered to register as a sex offender.[6] A motion to reconsider sentence filed by defendant was denied by the trial court.
The instant appeal followed.
DISCUSSION

Sufficiency of the Evidence

According to defendant, the evidence was insufficient to sustain his conviction for forcible rape. Defendant urges that the testimony of his cousin Angela and sister Glenda, who claimed to have witnessed him and L.R. engaging in various sexual acts prior to the alleged rape, coupled with ] phis own testimony, contradicts L.R.’s testimony that she did not have sex with defendant at the party. Defendant argues that the consensual sex at the party on April 26, 2014, explains the presence of defendant’s DNA on L.R.’s external genitalia.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a *1247 reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La. 05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La. App. 2 Cir. 01/09/08), 974 So.2d 181, writ denied, 08-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La. 02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La. App. 2 Cir. 01/14/09), 1 So.3d 833, writ denied, 09-0310 (La. 11/06/09), 21 So.3d 297.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such eases must resolve any conflict in the direct evidence by viewing that evidence in a light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Speed, 43,-786 (La. App. 2 Cir. 01/14/09), 2 So.3d 582, writ denied, 09-0372 (La. 11/06/09), 21 So.3d 299.
| inThe appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court affords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La. App. 2 Cir. 02/25/09), 3 So.3d 685, writ denied, 09-0725 (La. 12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La. App. 2 Cir. 05/09/07), 956 So.2d 758, writ denied, 07-1209 (La. 12/14/07), 970 So.2d 529.
La. R.S. 14:42.1 provides in pertinent part:
A. Forcible rape is rape committed when anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
(2) When the victim is incapable of resisting or of understanding the nature of the act by reason of stupor or abnormal condition of the mind produced by a narcotic or anesthetic agent or other controlled dangerous substance administered by the offender and without the knowledge of the victim.
When the defendant asserts that he was not the perpetrator, or remains silent, the state bears the burden of negating any reasonable probability of misidentification. State v. Powell, 27,959 (La. App. 2 Cir. 04/12/96), 677 So.2d 1008, writ denied, 96-1807 (La. 02/21/97), 688 So.2d 520; State v. Mickens, 31,737 (La. App. 2 Cir. 03/31/99), 731 So.2d 463, writ denied, 99-1078 (La. 09/24/99), 747 So.2d 1118. It is the province of the jury to resolve conflicting inferences from the evidence. State v. Mickens, supra; State v. Free, 26,267 (La. App. 2 Cir. 09/21/94), 643 So.2d 767, writ denied, 94-2846 (La. 03/10/95), 650 So.2d 1175. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony lnof one witness—if believed by the trier of fact—is sufficient to support for a requisite factual conclusion. State v. *1248 Jones, 34,863 (La. App. 2 Cir. 08/22/01), 794 So.2d 107, writ denied, 01-2648 (La. 8/30/02), 823 So.2d 938. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence. State v. Mickens, supra. This is equally applicable to the testimony of sexual assault victims. Id.; State v. Rives, 407 So.2d 1195 (La. 1981); State v. Thomas, 30,490 (La. App. 2 Cir. 04/08/98), 711 So.2d 808, writ denied, 99-0331 (La. 07/02/99), 747 So.2d 8.
There was sufficient direct and circumstantial evidence to support defendant’s conviction of forcible rape.
L.R. testified that she was tackled by defendant and his brother John Willie while walking home from the party at their parents’ home. L.R. repeatedly testified that she did not willingly have sex with defendant and his brother. Instead, L.R. stated that she tried to fight back, but she was physically held down by both brothers during the rape. L.R.’s intoxicated state, the only thing upon which all witnesses agreed, also prevented her from fighting back. L.R. was very clear about what occurred the night of her rape, and her physical state, particularly the grass in her hair and her torn shirt and shorts, together with the DNA evidence, further support L.R.’s testimony. According to Cpts. Lynch and Evans, L.R. clearly identified defendant and John Willie as her rapists. L.R.’s testimony is sufficient to establish the requisite elements of forcible rape, i.e., that defendant engaged in anal, oral or vaginal intercourse without the victim’s consent when she was either physically prevented from fighting back or too intoxicated to resist.
| ^Moreover, defendant admitted to having both vaginal and oral, sexual intercourse with L.R. on April 26, 2014, and his DNA was located on one of the swabs taken from L.R. during the investigation. Of" course, defendant did not admit to having sex with L.R. until after the -police informed him that L.R.’s rape kit would be tested for DNA.
Ultimately, it was the jury’s decision to discredit the testimony provided" by defendant and his relatives, Angela and Glenda, suggesting that L.R.—although extremely intoxicated—was a willing participant in an alleged sexual act that occurred prior to that attack in Jackson Park. The jury’s decision was based on a credibility call, and will not be disturbed on appeal. This assignment is without merit. ’

Excessiveness of Sentence

Defendant argues that trial court abused its discretion by imposing a 40-year sentence.
The district court is granted wide discretion when imposing a sentence within the minimum and maximum limits allowed by the statute; therefore, a sentence will not be set aside as excessive unless the defendant shows the district court abused its discretion. State v. Young, 46,575 (La. App. 2 Cir. 09/21/11), 73 So.3d 473, writ denied, 11-2304 (La. 03/09/12), 84 So.3d 550; State v. Hardy, 39,233 (La. App. 2 Cir. 01/26/05), 892 So.2d 710. A district judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, consequently, is given broad discretion in sentencing. State v. Zeigler, 42,661 (La. App. 2 Cir. 10/24/07), 968 So.2d 875, The reviewing court does not determine whether another sentence would have been more appropriate, but whether the district court abused its discretion. State v. Esque, 46,515 (La. App. 2 Cir. 09/21/11), 73 So.3d 1021, writ denied, 11-2347 (La. 03/09/12), 84 So.3d 551.
.. A sentence violates La. Const, art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless in *1249 fliction of pain and suffering. State v. Smith 01-2574 (La. 01/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Shoupe, 46,395 (La. App. 2 Cir. 06/22/11), 71 So.3d 508, writ denied, 11-1634 (La. 01/13/12), 77 So.3d 950. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La. 01/15/02), 805 So.2d 166; State v. Shoupe, supra. To constitute an excessive sentence, a court must find that the sentence makes no reasonable contribution to acceptable penal goals. State v. Griffin, 14-1214 (La. 10/14/15), 180 So.3d 1262.
At the time of defendant’s offense, the penalty for forcible rape was imprisonment at hard labor for not less than five years nor more than 40 years, with at least two years of the sentence imposed without the benefit of probation, parole, or suspension of sentence.
The trial court considered the violent nature of the offense and considered the following to be aggravating factors. There were two attackers chasing and subduing one victim. The perpetrators then grabbed their victim by the neck and held her down before ripping her clothes. Defendant’s 40-year sentence is within the sentencing range and, given the nature of this case, does not shock the sense of justice. This assignment also lacks merit.

]^Error Patent Review

When sentencing defendant for forcible rape, the trial court failed to state that the first two years of his sentence shall be imposed without benefits. Failure to include the required statutory restrictions of a sentence is self-correcting on review, eliminating the need to remand for a ministerial correction of the illegally lenient sentence. La. R.S, 15:301.1(A); State v. Nelson, 47,637 (La. App. 2 Cir. 01/16/13), 109 So.3d 413. We therefore amend defendant’s sentence to reflect that the first two years are to be served without the benefit of probation, parole, or suspension of sentence. La. R.S. 14:42.1(B). The trial court minutes are also to be amended to reflect this change.
A review of the record reveals that the trial judge did not properly inform defendant of the mandatory sex offender registration and notification requirements set forth in La, R.S. 15:540 et seq. Forcible rape is defined as a sex offense under La. R.S. 15:541. La R.S. 15:543 requires that the district court notify a defendant convicted of a sex offense, in writing (see La. R.S. 15:543.1), of the registration and notification requirements and that an entry be made in the court minutes, stating that the written notification was provided to the defendant.
While the minutes state that defendant was ordered to register as a sex offender, it appears that the judge did not provide defendant with written notification of the sex offender requirements. There is no indication in the record as to whether defendant is aware of the sex offender registration requirements for forcible rape. Therefore, we will remand this matter to the district court for the purpose of providing the appropriate written notice to defendant of the sex offender registration requirements and for the filing of h ¿written proof of such notice into the record of the proceedings. State v. Wilson, 50,418 (La. App. 2 Cir. 04/06/16), 189 So.3d 513, writ denied, 16-0793 (La. 04/13/17), 218 So.3d 629, 2017 WL 1534863; State v. Scott, 42,997 (La. App. 2 Cir. 02/13/08), 975 So.2d 782.
CONCLUSION
For the foregoing reasons, defendant’s conviction is affirmed. Defendant’s sentence is amended to include the restriction *1250 of benefits and, as amended, it is affirmed. The matter is remanded to the trial court with instructions to provide the defendant with appropriate written notice of his sex offender obligations in compliance with La. R.S. 15:543 and to file written proof thereof in the record.
CONVICTION AFFIRMED; SENTENCE AMENDED AND AS AMENDED, AFFIRMED; REMANDED.

. As of August 1, 2015, forcible rape is referred to as second degree rape.

. Defense counsel asked L.R. whether she ever accused Lowden Minnieweather, Jerry Renwick, or Gary Panley of raping her on previous occasions. Defense counsel attempted (unsuccessfully, since there were no police reports to support this assertion) to establish that L.R. had a history of accusing people of rape. At no point during this case, however, did L.R, accuse anyone else of committing the instant crime.

. Captain Lynch was a sergeant with the police department at the time of the incident.

. See, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

. Defendant was in police custody at the time Glenda claimed to have seen him at the party.

. The trial court did not order that a pre-sentence investigation be conducted prior to defendant’s sentencing.