Judgment rendered July 16, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,313-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

JOSHUA CORNELL PALMER                        Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 385,761

Honorable Ramona L. Emanuel, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Peggy J. Sullivan

JOSHUA CORNELL PALMER                    Pro Se

JAMES E. STEWART, SR.                 Counsel for Appellee
District Attorney

SENAE D. HALL
TOMMY J. JOHNSON
Assistant District Attorneys

* * * * *

Before THOMPSON, MARCOTTE, and ELLENDER, JJ.

**ELLENDER, J.**

Joshua Palmer ("Palmer") was convicted by a unanimous jury of the second degree murder of Dominique Roland ("Roland") and possession of a firearm by a convicted felon. He was sentenced to life in prison for the murder and 19 years at hard labor for possession of a firearm, with the sentences to be served consecutively, and without the benefit of parole, probation, or suspension of sentence. Finding no error in the verdict rendered by the jury, we affirm Palmer's convictions and his life sentence for the second degree murder. However, because the 24-hour waiting period required by La. C. Cr. P. art. 873 was not observed despite no waiver being given by the defendant, we are required to vacate the 19-year sentence imposed for possession of a firearm by a convicted felon and remand the matter to the trial court for resentencing.

## FACTS

In the early morning hours of May 31, 2021, Shreveport Police Department ("SPD") Officer Anthony Viscotti ("Ofc. Viscotti") was dispatched to the 5000 block of Westwood Park Drive near the intersection with Lyba Street, where a juvenile caller reported a shooting occurred. When he arrived, Ofc. Viscotti found Roland on his back, deceased, with two gunshot wounds in his chest and one in the side of his head; three 9 millimeter bullet casings were found within a few feet of the body.

Earlier that night, at 12:04 a.m., Braylon Roland ("Braylon"), Roland's brother, received a text message from Roland saying a man was walking around him with a gun; Braylon stated he knew his brother was referring to a guy who previously threatened to kill him. Braylon described his brother as a loyal, protective, family-oriented man.

Breanna Warren ("Warren") testified she had been in a romantic relationship with Palmer, and identified him in court as the defendant. Warren stated she was also friends with Roland, whom she met as a customer at Family Dollar, but she stated they were not romantically involved. On May 30, Palmer came to her apartment, located very near where the shooting occurred, dressed in all black and asked her to hide his gun in her apartment while he went to work. Warren agreed, placed the gun in her apartment, and also went to work. After she got off, Palmer texted Warren and asked her to leave his gun for him somewhere outside. She placed it in a bag, which she hung on her front door knob. Palmer texted her to let her know he retrieved his handgun, which Warren believed was a 9 millimeter.

Later that evening, Roland came to Warren's apartment to smoke marijuana. While he was there, Palmer repeatedly texted Warren; he wanted Roland to leave so he could come over. Roland eventually left sometime between 11:00 p.m. and midnight. Shortly thereafter, Palmer called Warren, asking her why she told Roland he was going to shoot him; Warren denied ever making that statement. While she was on the phone with Palmer, Warren heard Roland's voice in the background and knew they were together.

Warren's boss phoned her around 8:30 a.m. on May 31, 2021, and told her Roland had been killed. Warren testified she then spoke with an officer from SPD, told the officer about her prior interactions with Palmer and Roland the evening before, and gave SPD permission to extract information from her cell phone. She also identified Facebook messages

2

between herself and Palmer, as well as text messages between herself and Roland, which were entered into evidence.

Laronski Collins ("Collins") testified that in May 2021 he lived in an apartment next door to Warren. He recalled regularly seeing a guy on a bike who wore all black visit Warren, usually around 12:30 a.m. when Collins normally got home from work. Collins testified he saw the guy in all black, whom he identified as the defendant, in the early morning hours of May 31. Collins recalled being startled when he saw Palmer standing around the corner on Westwood Park Drive near Lyba Street as he was driving home. He was confident it was Palmer as he saw him clearly in the beam of his headlights. Though Collins was focused on Palmer because he recognized him, he also noticed another man farther down the street. Collins testified he continued directly to his home and sat in his car for a few minutes before he heard three gunshots.

SPD Officer Matthew Dixon ("Ofc. Dixon"), the assigned crime scene investigator, took photographs of the crime scene, including photographs of Roland lying in the ditch with his hands still in his pockets and a cell phone sticking out of one pocket, his gunshot wounds, the bullet casings, and the intersection of Westwood Park Drive and Lyba Street. Ofc. Dixon collected all evidence at the scene, and he obtained surveillance videos from surrounding businesses, which included the Economy Inn and the Super 8 Motel on Westwood Park Drive.

Former SPD Detective Peggy Elzie ("Det. Elzie") was assigned to the homicide unit and dispatched to the scene of Roland's murder. Upon arrival, she saw a deceased male lying on his back with his hands in his pockets who appeared to have been killed by gunshot wounds. Det. Elzie

located a juvenile witness (an 11-year-old) and transported him to the Economy Inn for an interview, who gave her a description of the shooter, of the gun, and of what occurred.

Det. Elzie testified videos from the Economy Inn and Super 8 Motel were obtained, and these four videos were introduced into evidence without objection:

> Video 1: Surveillance from inside the lobby of the Economy Inn beginning at 11:15 p.m. on May 30, 2021. Approximately three minutes and 20 seconds into the video, a black male dressed in all black entered the lobby to use the ATM; he then departed. Still photographs obtained from the surveillance revealed a black male with a beard who was wearing a dark-colored hat, a black long-sleeved shirt or jacket, black or dark pants, wearing a backpack and carrying a wallet.

> Video 2: Surveillance from the top of the Economy Inn, which showed Westwood Park Drive and the Economy Inn parking lot beginning at 12:37 a.m. on May 31, 2021. The video shows two individuals walking toward the Economy Inn. One person runs toward a field shown on the left side of the screen, while the other falls to the ground.

> Video 3: Surveillance from a breezeway at the Super 8 Motel beginning at approximately 12:48 a.m. on May 31, 2021, shows an individual in all black clothing entering the breezeway; he appears to be in a state of panic, pacing back and forth.

> Video 4: Surveillance from the lobby of the Economy Inn beginning at approximately 4:22 a.m. on May 31, 2021, which shows the same individual from Video 1, wearing a white sleeveless tank top at this time, entering the lobby and using the ATM.

Det. Elzie, who identified Palmer as the individual seen in Videos 1, 3, and 4, testified she made contact with the individual seen on the video from the Economy Inn lobby, and asked him what he was doing there at 4:22 a.m.; Palmer stated he was trying to visit his girlfriend. When she asked him about using the ATM, Palmer told her that was the first time he tried to use the ATM that night. The state then offered and introduced a map of the area,

4

without objection, showing where the shooting occurred in relation to the location of the Economy Inn and the Super 8 Motel.

After Det. Elzie notified Roland's family of his death, Roland's brother Braylon provided her with a screenshot of the text message he received at 12:04 a.m. on May 31. The phone number associated with the text was verified as a number belonging to Roland. Det. Elzie then contacted Warren, who told her she and Palmer had recently broken up after having a relationship for two or three months, and that she was friends with Roland, but nothing more. The text and Facebook messages between Warren and Palmer were introduced into evidence over the defense's objection. Those messages established the following:

(1) 11:36 p.m. on May 30, 2021: Palmer retrieved his gun from Warren's doorknob.

(2) 12:02 a.m. on May 31, 2021: Palmer asked Warren to open her door and expressed his dissatisfaction with Roland's presence at Warren's apartment despite Warren's assurances Roland was just her friend. Warren asked Palmer not to start anything with Roland.

(3) 12:07 a.m. on May 31, 2021: Palmer messaged Warren and told her Roland had 15 minutes to leave her apartment.

(4) 1:38 a.m. on May 31, 2021: Palmer texted Warren, "Anyone talk to you tomorrow—I'm sorry. Anyway talk to you tomorrow can you delete all these messages."

Det. Elzie confirmed she spoke with Collins, Warren's next door neighbor, who reported Warren had a volatile relationship with Palmer, he saw Palmer on his way home from work just before the shooting standing near Lyba Street in all black just down from another man, and he heard three gunshots a few minutes after he pulled up to his apartment. Det. Elzie said based on the evidence she obtained, she believed Palmer was responsible for shooting Roland.

5

SPD Sergeant Jeremy Jordan ("Sgt. Jordan"), a digital forensics supervisor, testified he was given two cell phones to process, one belonging to Palmer, and one belonging to Warren. The data from Warren's phone shows Roland went to her home on the evening of May 30, 2021, to smoke marijuana and eat dinner. The data from Palmer's phone indicated his cell phone pinged in the area of Westwood Park Drive and Lyba Street at the time of the murder.

Dr. James Traylor, Jr. ("Dr. Traylor"), was accepted as an expert in forensic pathology, without objection, and he testified to the report he prepared following his autopsy of Roland. Dr. Traylor confirmed the cause of Roland's death was homicide, specifically attributable to the bullet that went through his sternum, injuring the right ventricle of the heart as well as the pulmonary artery and the aorta. The autopsy photos, which showed three through-and-through gunshot wounds, were entered into evidence without objection.

To establish Palmer had a prior felony conviction, SPD Sergeant John Madjerick ("Sgt. Madjerick") was tendered as an expert in fingerprint comparison and identification by the state with no objection. Sgt. Madjerick identified a bill of information bearing Caddo Parish District Court Docket No. 303179, wherein Joshua Palmer was charged with and pled guilty to possession of marijuana third offense, a felony, and which contained fingerprints taken from the defendant following his conviction in October 2012. Sgt. Madjerick testified the fingerprints taken from Palmer in open court at trial were a match for the fingerprints taken from him in the prior case, and he testified less than 10 years had passed since Palmer's previous felony conviction.

6

The defense presented no evidence at trial. After closing arguments, the jury deliberated for less than an hour, finding Palmer guilty as charged of second degree murder and possession of a firearm by a convicted felon.

Sentencing was scheduled for May 9, 2024, at which time the trial court denied Palmer's motions for new trial and post-verdict judgment of acquittal, and proceeded immediately to sentencing. While Palmer did not waive the 24-hour delay set out in La. C. Cr. P. art. 873, he also failed to object to the trial court's decision to proceed to sentencing immediately following its ruling on his motions. Palmer was sentenced to life in prison for the second degree murder of Roland, and to serve 19 years at hard labor for possession of a firearm by a convicted felon. Those sentences were to be served consecutively, and without the benefit of parole, probation, or suspension of sentence. The trial court advised Palmer of his right to appeal within 30 days and his right to seek post conviction relief, but did not inform Palmer of the time period for doing so. The trial court indicated it would file written reasons for sentencing at a later date, but the record lacks any such written reasons. This appeal followed.

## DISCUSSION

Palmer argues the state provided no witnesses or direct evidence to prove he was guilty of second degree murder or possession of a firearm by a convicted felon. Palmer contends the state's reliance on his presence in the area at the time of the murder was misplaced, as other persons were also seen in the neighborhood at the same time and he could not be identified by any witnesses or on any available surveillance video. Palmer argues the circumstantial evidence presented by the state at trial failed to meet the standards set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L.

7

Ed. 2d 560 (1979), and failed to prove he was guilty of second degree murder or possession of a firearm by a convicted felon. He asks this court to vacate his convictions and set aside his consecutive sentences.

The state responds the evidence presented was sufficient to support the jury's findings of guilt and points out the total absence of any evidence to support a reasonable hypothesis warranting reversal of his convictions. As it pertains to Palmer's argument that the trial court erred in imposing his sentences consecutively, the state concedes the 19-year sentence for possession of a firearm by a convicted felon was improperly imposed less than 24 hours after Palmer's conviction without a waiver by Palmer of the delay. The state suggests the trial court's action is an error patent, requiring this court to vacate that sentence and remand for resentencing. The state also argues this action by the court should pretermit its consideration of the issue of excessive sentence.

### Sufficiency of the Evidence

We first consider whether the evidence presented by the state is sufficient to support Palmer's convictions. *State v. Hearold*, 603 So. 2d 731 (La. 1992). The relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, *supra*; *State v. Ramsey*, 55,491 (La. App. 2 Cir. 2/28/24), 381 So. 3d 308, *writ denied*, 24-00379 (La. 10/1/24), 393 So. 3d 865.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to

substitute its own appreciation of the evidence for that of the fact finder. *State v. Middleton*, 55,634 (La. App. 2 Cir. 5/22/24), 386 So. 3d 1283, *writ denied*, 24-00822 (La. 2/19/25), 400 So. 3d 926.  The appellate court does not assess the credibility of witnesses or reweigh the evidence.  *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *Middleton*, *supra*; *State v. Bass*, 51,411 (La. App. 2 Cir. 6/21/17), 223 So. 3d 1242.  A reviewing court affords great deference to a trial court's decision to accept or reject the testimony of a witness in whole or in part.  *Middleton*, *supra*; *Bass*, *supra*.

Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts.  *State v. Walker*, 51,217 (La. App. 2 Cir. 5/17/17), 221 So. 3d 951, *writ denied*, 17-1101 (La. 6/1/18), 243 So. 3d 1064; *State v. Matthews*, 50,838 (La. App. 2 Cir. 8/10/16), 200 So. 3d 895, *writ denied*, 16-1678 (La. 6/5/17), 220 So. 3d 752.  Circumstantial evidence provides proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.  *State v. Lilly*, 468 So. 2d 1154 (La. 1985); *State v. Patterson*, 50,305 (La. App. 2 Cir. 11/18/15), 184 So. 3d 739, *writ denied*, 15-2333 (La. 3/24/16), 190 So. 3d 1190.

When the conviction is based on circumstantial evidence, such evidence must exclude every reasonable hypothesis of innocence.  La. R.S. 15:438.  Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law.  *State v. Shapiro*, 431 So. 2d 372 (La. 1982); *State v. Matthews*, *supra*.  In the absence of any internal contradiction or irreconcilable conflict with physical evidence, the testimony of a witness alone, if believed by the trier of fact, is sufficient

support for a requisite factual conclusion. *State v. Taylor*, 53,934 (La. App. 2 Cir. 5/5/21), 321 So. 3d 486. When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. *State v. Captville*, 448 So. 2d 676 (La. 1984); *State v. Walker*, *supra*; *State v. Matthews*, *supra*.

There is no merit to Palmer's argument the state failed to present sufficient evidence for the jury to convict him of possession of a firearm by a convicted felon and second degree murder.

As set forth in La. R.S. 14:95.1, it is unlawful for any person to possess a firearm who has been convicted of certain felonies, provided the applicable ten-year cleansing period has not yet lapsed. In addition to Palmer's use of a firearm in the shooting of Roland, Warren's testimony also established Palmer was in possession of a firearm when he asked her to hold a gun for him, and Palmer's text message acknowledging he retrieved his weapon from where Warren left it at her door also proved his possession of that firearm. The state further established Palmer's status as a convicted felon through Sgt. Madjerick's testimony, that Palmer's prior drug conviction was a qualifying felony under R.S. 14:95.1, and that the ten-year cleansing period had not yet passed. Palmer's conviction for possession of a firearm by a convicted felon was reasonable and supported by the evidence presented.

The evidence of Palmer's guilt for the second degree murder of Roland is substantial. Second degree murder is defined as the killing of a human being when the offender has a specific intent to kill or to inflict great

10

bodily harm. La. R.S. 14:30.1. Palmer's text messages to Warren, both before and after retrieving his gun from her door, proved his physical presence in the vicinity of Warren's apartment just prior to the shooting. Palmer's possession of a firearm, his awareness of Roland's presence at Warren's apartment, and his desire for Roland to leave were all established. Palmer's call to Warren, during which she heard Roland's voice in the background after both men left her apartment, placed Palmer with Roland just prior to his murder.

Collins' testimony established Palmer's location at the corner of Lyba Street and Westwood Park Drive, along with another man, only a few minutes prior to the shooting. Collins' statement that he heard three gunshots shortly thereafter was corroborated by the three bullet casings found near Roland's body. Testimony from SPD Officers Viscotti and Dixon established Roland was shot three times, and testimony from Dr. Taylor confirmed Roland died from a gunshot wound to his chest.

Video from the Economy Inn lobby shows Palmer, dressed in all black and carrying a backpack, using the ATM at approximately 11:15 p.m. on May 30. Another video from the Economy Inn parking lot shows Roland was shot and killed at 12:37 p.m. on Westwood Park Drive near its intersection with Lyba Street by a man in all black who fled as Roland fell. Video from the Super 8 Motel shows Palmer entering the breezeway of the motel around 12:48 p.m., wearing all black and in a panic. Facebook messages between Palmer and Warren show Palmer apologizing for something unspecified around 1:38 a.m. on May 31, and asking her to delete their Facebook messages. Testimony given by Sgt. Jordan revealed

11

Palmer's phone location showed him to be at the scene of the murder when Roland was killed.

When the evidence presented by the state is considered, the jury's verdict is reasonable and well supported by the law and evidence. Further, the circumstantial evidence relied upon by the jury in its deliberation was not in conflict with any of the physical evidence, and no evidence suggested any alternative hypothesis. For these reasons, we affirm Palmer's convictions.

### *Errors Patent*

On review for errors patent, we find the trial court failed to observe the requirements of La. C. Cr. P. art. 873 following its denial of Palmer's motion for new trial. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least 24 hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article, sentence may be imposed immediately. La. C. Cr. P. art. 873. The record reveals the trial court sentenced Palmer immediately following the denial of his motions for new trial and post-verdict judgment of acquittal, but it does not indicate Palmer waived the 24-hour delay mandated by statute.

As it pertains to the second degree murder conviction, while the language in La. C. Cr. P. art. 873 is mandatory, when the sentence given is statutorily required, then the trial court's failure to observe the 24-hour period can be considered harmless error as the trial court had no discretion in the sentence imposed. *State v. Seals*, 95-0305 (La. 11/25/96), 684 So. 2d 368; *State v. Thomas*, 55,183 (La. App. 2 Cir. 8/9/23), 369 So. 3d 953, *writ denied*, 23-01249 (La. 2/14/24), 379 So. 3d 26. For this reason, despite the

12

trial court's failure to adhere to the requirements of La. C. Cr. P. art. 873, we affirm the mandatory life sentence without parole, probation, or suspension of sentence imposed by the trial court.

However, when the trial court is not required to impose a mandatory sentence, as with a conviction for possession of a firearm by a convicted felon, we are constrained to vacate the sentence imposed and remand the matter for resentencing due to the trial court's failure to wait 24 hours following the denial of a motion for new trial before imposing a sentence. Consequently, any consideration of other sentencing issues pertaining to that charge are pretermitted, including Palmer's assignment of error wherein he contends running the 19-year sentence for possession of a firearm by a convicted felon consecutively with the life sentence for second degree murder is excessive and unsupported by the record.

Finally, the trial court is required at sentencing to inform the defendant of the two-year prescriptive period for filing any application for post conviction relief, either verbally or in writing. La. C. Cr. P. art. 930.8(C). While the trial court did advise Palmer of his right to seek post conviction relief, he was not informed of the time period in which he could do so. On remand, we ask the trial court to correct this error.

## CONCLUSION

Joshua Palmer's convictions for second degree murder and possession of a firearm by convicted felon are affirmed, and his life sentence without the benefit of parole, probation, or suspension of sentence for the second degree murder of Dominique Roland is also affirmed. However, because the trial court failed to wait the required 24 hours following its denial of Palmer's motion for new trial, we vacate the sentence imposed for

13

possession of a firearm by a convicted felon and remand the matter for resentencing, with the trial court ordered to provide reasons for the sentence imposed in accordance with La. C. Cr. P. arts. 873 and 894.1, and to advise Palmer of the time limitation to file any post conviction relief application in accordance with La. C. Cr. P. art. 930.8(C).

**CONVICTIONS AFFIRMED; SENTENCE FOR SECOND DEGREE MURDER AFFIRMED; SENTENCE FOR POSSESSION OF A FIREARM BY A CONVICTED FELON VACATED AND CASE REMANDED FOR RESENTENCING.**